**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DREW ADAMS, a minor, by and through his next friend and mother, ERICA ADAMS KASPER,

    Plaintiff,

v.

THE SCHOOL BOARD OF ST. JOHNS COUNTY, FLORIDA,

    Defendant.

**Case No. 3:17-cv-00739-TJC-JBT**

---

**PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE PURPORTING TO DISPUTE PLAINTIFF'S DIAGNOSIS OF GENDER DYSPHORIA AND SUPPORTING MEMORANDUM OF LAW**

Pursuant to Federal Rules of Evidence 403, 701, and 702, Plaintiff Drew Adams ("Drew"), a minor, by and through his next friend and mother, Erica Adams Kasper (collectively, "Plaintiff"), and by and through their undersigned counsel, respectfully moves this Court to exclude any evidence, argument, or opinion offered by Defendant The School Board of St. Johns County, Florida ("Defendant" or the "School Board") to dispute Plaintiff's diagnosis of gender dysphoria. Pursuant to Rules 701 and 702 of the Federal Rules of Evidence, Defendant can only challenge Plaintiff's gender dysphoria diagnosis through expert medical testimony and both of Defendant's experts here have testified under oath that they have no basis to question Drew's diagnosis with gender dysphoria. Having failed to proffer an expert to dispute Drew's diagnosis, any attempt to dispute or contradict Drew's diagnosis of gender dysphoria at trial should be excluded as unsupported, inadmissible and prejudicial.

1

Moreover, it is not the role of a school board to question their students' medical diagnoses or argue that the prescribed treatment – including social transition and access to restrooms corresponding to one's gender identity – are inappropriate. As such, it is beyond the pale that cognizant of their role as a school board, as well as the fact that neither of their experts dispute Drew's gender dysphoria diagnosis, that Defendant would seek to dispute the medical diagnosis for one of its students.

## BACKGROUND

On June 28, 2017, Plaintiff filed a complaint alleging that the School Board's policy preventing him from using the bathroom that corresponds to his gender identity constitutes impermissible discrimination under the Equal Protection Clause of the Fourteenth Amendment based on sex and transgender status, and unlawful sex discrimination under Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 et seq. ("Title IX"). Plaintiff's complaint asserts that Plaintiff is a boy, who is transgender, and who has been diagnosed with gender dysphoria. By his complaint, Plaintiff seeks declaratory and injunctive relief as well as compensatory and non-economic garden-variety damages.

There is no dispute that Drew is transgender and has been diagnosed with gender dysphoria. Indeed, both of Defendant's experts have testified under oath that they do not dispute that Drew was diagnosed with gender dysphoria. Indeed, in the deposition for Defendant's expert, Dr. Paul Hruz, Dr. Hruz testified:

> Q.  Would you agree that Drew's treating physicians have diagnosed him with gender dysphoria?
>
> A.  I would agree, yes.

>    Q.    Would you agree that Drew Adams suffers from gender dysphoria?
>
>    A.    Based on the information presented to me, I would accept that. I have nothing to dispute that.

Hruz Depo. Tr. 25:24-26:5 (the relevant excerpts of Dr. Hruz's deposition transcript are attached hereto as Exhibit "A").  In fact, Dr. Hruz has never even treated a patient for gender dysphoria, so clearly would not be a position to diagnosis the condition in any event.  Hruz Depo. Tr. 25:20-25:23 ("Q. Okay. And based on your testimony, would you agree that you have not treated any transgender patients for gender dysphoria? A. Yes, I would agree.").  And Dr. Hruz is likewise not offering a specific opinion on whether Drew is transgender, he agrees that Drew is a transgender male.  Hruz Depo. Tr. 16:10-16:14; *id.* at 23:4-23:8 ("Is Drew a transgender boy? A. Again, you have to be very careful when you make the designation. The -- the terminology that is often used right now would classify him as a transgendered male.").

Similarly, Defendant's second purported expert, Dr. Allan Josephson,[1] has specifically testified that he is *not* an expert in gender dysphoria and has no opinions to offer as to—let alone dispute—Plaintiff's gender dysphoria diagnosis.  Josephson Depo. Tr. 21:1-21:7; *id.* at 102:7-102:12 ("Let me just step back to the earlier line of questions just for a second. Can you identify for the record what specific qualifications you have to hold yourself out as an expert in gender dysphoria? . . . A. I haven't held myself out as an expert.") (the relevant excerpts of a rough draft of Dr. Josephson's deposition transcript are attached hereto as Exhibit "B").

---

[1] Because Dr. Josephson was deposed just yesterday, November 28, 2017, Plaintiff only has access to a rough draft of the deposition transcript at this time, of which excerpts are included with this motion.

Indeed, Dr. Josephson agrees that Drew has been diagnosed with gender dysphoria and has stated he is not offering an opinion on whether Drew's gender dysphoria has or will persist. Josephson Depo. Tr. 20:3-20:5 ("Q. Do you agree that Drew Adams was diagnosed with gender dysphoria by his medical providers? A. Yes"); *id.* at 19:2-19:5 ("Q. Are you rendering an opinion as to whether Drew Adams suffers from gender dysphoria? A. No, because I haven't examined him."); *id.* at 20:15-20:22 ("Q. So then are you offering any opinions on whether Drew Adams [sic] gender dysphoria has or will persist? A. I'm not offering an opinion on that. I mean I could be asked one and would probably, I think it would be fairly accurate. But I'm not offering it in this case."). And like Dr. Hruz, Dr. Josephson is not offering a specific opinion on whether Drew is transgender and does not dispute that Drew has a male gender identity. Josephson Depo. Tr. 20:23-20:25 ("Q. Okay. Are you offering any opinion on whether Drew Adams will seek to identify as being transgender? A. No."); *id.* at 18:16-18-18 ("Q. Okay. Do you have any reason to doubt that Drew identifies as male? A. No.").

In sum, neither of Defendant's experts spoke with, met, interviewed, evaluated or treated Plaintiff and, thus, cannot proffer any opinions directed to his medical diagnosis, prognosis or treatment. *See* Hruz Depo. Tr. 17:9-18:2; *id.* at 46:23-47:22; Josephson Depo. Tr. 9:24-10:7; *id.* at 20:3-20:5; *id.* at 20:15-20:22. There is likewise no dispute that Drew has already taken steps to socially and medically transition, a fact likewise conceded by Dr. Josephson. Josephson Depo. Tr. 14:9-14:22.

Given that neither of Defendant's experts are offering any opinions regarding Plaintiff's diagnosis of gender dysphoria, the cause of his gender dysphoria, whether his gender dysphoria will persist, or the propriety of his medical treatment related to gender dysphoria,

there is no credible basis to allow Defendant to try to call into question that diagnosis or the impact of the same. Plaintiff's medical diagnosis of gender dysphoria – a diagnosis made using the criteria set forth in the DSM-5 and made by Plaintiff's treating medical providers can, therefore, not be called into question at trial. Fed. R. Evid. 701-702.

Notwithstanding the lack of foundation or any viable witness to opine on Plaintiff's medical diagnosis, Defendant has represented that it intends to dispute Drew's medical diagnosis of gender dysphoria and potentially question whether his condition was exacerbated by the Defendant's discriminatory policy. The position is at odds with the fact that neither of Defendant's experts have any expertise in this area and have acknowledged as much under oath. Because gender dysphoria is a complicated medical diagnosis that is outside the scope of lay opinion testimony, and because none of Defendant's experts have disputed Drew's diagnosis or otherwise testified that they have any expertise in this area, all evidence, argument, or opinion offered by Defendant to dispute Drew's gender dysphoria diagnosis should be excluded.

Put simply, it is not the role of the School Board to question their students' medical diagnoses or argue that the prescribed treatment – including social transition and access to restrooms corresponding to one's gender identity – are inappropriate.

## ARGUMENT

Federal district courts have authority to make *in limine* rulings pursuant to their authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 (1984); *see also Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1503 (11th Cir. 1985) (stating that consideration of a motion *in limine* is a matter within the discretion of the District Court); *Arnold v. Nobartis*

*Pharm. Corp.*, 28 F. Supp. 3d 1268 (M.D. Fla. 2014) (ruling on an "omnibus motion *in limine*" and granting a series of evidentiary exclusions). The purpose of a motion *in limine* is "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce*, 469 U.S. at 40 n. 2 (1984).

A lay witness may not offer opinion testimony that is "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). Courts have routinely held that testimony as to complex medical diagnoses are outside the scope of permissible lay opinion testimony. *See, e.g. Parillo v. Lowe's Home Centers, LLC*, Case No. 3:14-cv-369, 2017 WL 4124585, at *1 (S.D. Ohio Sept. 18, 2017) ("lay witness opinions regarding the cause of complex medical conditions are . . . prohibited under Rule 701"); *Montoya v. Sheldon*, 286 F.R.D. 602, 614 (D.N.M. 2012) ("Diagnosing that a patient suffers from a complicated medical condition is expert testimony"); *Ferris v. Pennsylvania Fed'n Broth. of Maint. Way Emps.*, 153 F. Supp. 2d 736, 746 (E.D. Pa. 2001) (holding that a lay person could not "testify regarding any specific medical diagnosis of [the plaintiff's] mental ailments as the conditions from which he suffers . . . are complex injuries beyond the knowledge of a layperson").

Courts have also held that a party cannot dispute a medical determination as to whether an individual has gender dysphoria absent qualified expert testimony refuting the prior medical determination. *See Maggert v. Hanks*, 131 F.3d 670, 671 (7th Cir. 1997) (holding that there was no "genuine issue of material fact" where defendant had failed to provide expert testimony to refute psychiatrist's determination that the plaintiff did not have gender dysphoria); *Sundstorm v. Frank*, 630 F. Supp. 2d 974, 987 (E.D. Wis. 2007) (granting plaintiff's motion *in*

*limine* to exclude a corrections expert's proffered testimony regarding gender identity disorder because he had no psychological or medical "knowledge, skill, experience, training, or education" as required by Federal Rule of Evidence 702).

In this case, the Defendant has not and cannot proffer any expert or layperson testimony that disputes or contradicts Drew's diagnosis of gender dysphoria, a diagnosis made by several of Drew's treating physicians. The deadline for expert discovery and submission of expert reports has long-since passed, and the two experts that Defendant has disclosed have made clear that the do not contest or otherwise dispute the diagnosis, and in any event, neither has expertise in this area. A lay witness would not be competent to testify regarding the veracity of a complex medical diagnosis such as gender dysphoria. *See, e.g. Sundstorm*, 630 F. Supp. 2d at 987; *Ferris*, 153 F. Supp. 2d at 746; *see also* Fed. R. Evid. 701(c). In light of the above and the record evidence, the Court should exclude any argument, evidence, or opinion offered by Defendant attempting to dispute Drew's medical diagnosis of gender dysphoria.

## CONCLUSION

WHEREFORE, based on the foregoing, Plaintiff respectfully requests that the Court grant the instant motion *in limine* in full and preclude Defendant from offering any evidence, argument, or opinion disputing Plaintiff's diagnosis of gender dysphoria.

## CERTIFICATE OF CONFERENCE PURSUANT TO LOCAL RULE 3.01(g)

Pursuant to 3.01(g) of the Local Rules of the Middle District of Florida, the undersigned certifies that he has conferred with the attorneys representing Defendant regarding the relief requested in the motion. The parties were unable to reach a resolution and Defendant's counsel does not consent to the relief requested.

Dated this 29th of November, 2017

Respectfully submitted,

*/s/ Omar Gonzalez-Pagan*

| | |
|---|---|
| Omar Gonzalez-Pagan (*admitted pro hac vice*) LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC. 120 Wall Street, 19th Floor New York, New York 10005-3919 Telephone: 212-809-8585 Facsimile: 212-809-0055 ogonzalez-pagan@lambdalegal.org | Kirsten Doolittle, Trial Counsel Florida Bar No. 942391 THE LAW OFFICE OF KIRSTEN DOOLITTLE, P.A. The Elks Building 207 North Laura Street, Ste. 240 Jacksonville, FL 32202 Telephone: 904-551-7775 Facsimile: 904-513-9254 kd@kdlawoffice.com |
| Natalie Nardecchia (*admitted pro hac vice*) LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC. 4221 Wilshire Boulevard, Suite 280 Los Angeles, CA 90010-3512 Tel. 213-382-7600 \| Fax: 213-351-6050 nnardecchia@lambdalegal.org | Jennifer Altman Florida Bar No: 881384 Markenzy Lapointe Florida Bar No: 172601 Shani Rivaux Florida Bar No: 42095 Aryeh Kaplan Florida Bar No: 60558 PILLSBURY WINTHROP SHAW PITTMAN, LLP |
| Tara L. Borelli (*admitted pro hac vice*) LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC. 730 Peachtree Street NE, Suite 640 Atlanta, GA 30308-1210 Telephone: 404-897-1880 Facsimile: 404-897-1884 tborelli@lambdalegal.org | 600 Brickell Avenue Suite 3100 Miami, FL 33131 Telephone: 786-913-4900 Facsimile: 786-913-4901 jennifer.altman@pillsbury.com markenzy.lapointe@pillsburylaw.com shani.rivaux@pillsbury.com aryeh.kaplan@pillsbury.com |
| Paul D. Castillo (*admitted pro hac vice*) LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC. 3500 Oak Lawn Avenue, Suite 500 Dallas, Texas 75219 Telephone: 214-219-8585 Facsimile: 214-219-4455 pcastillo@lambdalegal.org | Richard M. Segal (*admitted pro hac vice*) Nathaniel R. Smith (*admitted pro hac vice*) PILLSBURY WINTHROP SHAW PITTMAN LLP 501 W. Broadway, Suite 1100 San Diego, CA 92101 Telephone: 619-234-5000 Facsimile: 619-236-1995 richard.segal@pillsburylaw.com nathaniel.smith@pillsburylaw.com |

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2017, the foregoing motion was filed electronically using the Court's ECF system, which will provide electronic notice to all counsel of record, including:

>Terry J. Harmon (tharmon@sniffenlaw.com)
>Robert J. Sniffen (rsniffen@sniffenlaw.com)
>Michael P. Spellman (mspellman@sniffenlaw.com)
>Lisa B. Fountain (lfountain@sniffenlaw.com)
>Kevin Kostelnik (kkostelnik@sniffenlaw.com)
>SNIFFEN & SPELLMAN, P.A.
>123 North Monroe Street
>Tallahassee, Florida 32301
>
>Robert Christopher Barden (rcbarden@mac.com)
>RC Barden & Associates
>5193 Black Oaks Court North
>Plymouth, MN 55446-2603
>
>*Attorneys for Defendant, The School Board of St. Johns County, Florida*

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan
(*admitted pro hac vice*)
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, New York 10005-3919
Tel.: 212-809-8585 | Fax: 212-809-0055
ogonzalez-pagan@lambdalegal.org