# EXHIBIT A

Page 1

1                   UNITED STATES DISTRICT COURT
                            FOR THE
2                   MIDDLE DISTRICT OF FLORIDA
3

   DREW ADAMS, a minor,      )
4                            )
            Plaintiff,       )
5                            )
       vs.                   )Civil Action
6                            )No.3:17-cv-00739-TJC-JBT
   THE SCHOOL BOARD OF ST. )
7  JOHNS COUNTY, FLORIDA,    )
                             )
8            Defendant.      )
9
10
11

12      VIDEOTAPED DEPOSITION OF PAUL W. HRUZ, M.D., Ph.D
13               Taken on behalf of Plaintiff
14                 November 20, 2017
15      (Starting time of the deposition:  8:58 a.m.)
16
17
18
19
20
21
22
23
24
25

Page 2

1              I N D E X   O F   E X A M I N A T I O N

2

3                                                       Page

4    Questions by Mr. Gonzalez-Pagan ................   7

5    Questions by Mr. Kostelnik ..................... 286

6    Further Questions by Mr. Gonzalez-Pagan ......... 292

7

8    INDEX  OF  EXHIBITS

9    EXHIBIT      DESCRIPTION                          PAGE

10   For the Plaintiff:

11   Exhibit 1    Subpoena                              11
     Exhibit 2    Expert Declaration                    29
12   Exhibit 3    Growing Pains Article                 29
     Exhibit 4    Letter                                68
13   Exhibit 5    Article                              163
     Exhibit 6    Article                              231
14   Exhibit 7    Article                              246
     Exhibit 8    Article                              249

15

16           (The original exhibits were retained by the
     court reporter, to be attached to Mr. Gonzalez-Pagan's
17   transcript.)

18

19

20

21

22

23

24

25

Page 3

1                    UNITED STATES DISTRICT COURT
                            FOR THE
2                    MIDDLE DISTRICT OF FLORIDA
3

    DREW ADAMS, a minor,     )
4                            )
            Plaintiff,       )
5                            )
        vs.                  )Civil Action
6                            )No.3:17-cv-00739-TJC-JBT
    THE SCHOOL BOARD OF ST. )
7    JOHNS COUNTY, FLORIDA,   )
                             )
8            Defendants.     )
9
10              VIDEOTAPED DEPOSITION OF WITNESS, PAUL W.
11   HRUZ, M.D., Ph.D., produced, sworn, and examined on
12   the 20th day of November, 2017, between the hours of
13   nine o'clock in the forenoon and six o'clock in the
14   evening of that day, at the offices of Veritext Legal
15   Solutions, 515 Olive Street, Suite 300, St. Louis,
16   Missouri before BRENDA ORSBORN, a Certified Court
17   Reporter within and for the State of Missouri, in a
18   certain cause now pending in the United States
19   District Court for the Middle District of Florida,
20   wherein Drew Adams, a minor, is the Plaintiff and The
21   School Board of St. Johns County, Florida is the
22   Defendant.
23
24
25

Page 4

1                     A P P E A R A N C E S
2           For the Plaintiff:
3           Mr. Omar Gonzalez-Pagan
            Lambda Legal
4           120 Wall Street
            New York, New York 10005
5           (212) 809-8585
            ogonzalez-pagan@lambdalegal.org
6           and
            Ms. Shani Rivaux
7           Pillsbury Winthrop Shaw Pittman LLP
            600 Brickell Avenue, Suite 3100
8           Miami, Florida 33131
            (786) 913-4882
9           shani.rivaux@pillsburylaw.com
10
11          For the Defendant:
12          Mr. Kevin Kostelnik
            Mr. Terry Harmon (via phone)
13          Sniffen & Spellman, P.A.
            123 North Monroe Street
14          Tallahassee, Florida 32301
            (850) 205-1996
15          kkostelnik@sniffenlaw.com
16
17          The Court Reporter:
18          Ms. Brenda Orsborn, RPR/CSR/CCR
            Missouri CCR No. 914
19          Illinois CSR No. 084-003460
            Veritext Legal Solutions
20          515 Olive Street, Suite 300
            St. Louis, Missouri 63101
21          (888) 391-3376
22
23          The Videographer:  Ms. Kimberlee Lauer
24
25

Page 5

1        IT IS HEREBY STIPULATED AND AGREED, by and

2    between counsel for Plaintiffs and counsel for

3    Defendants that the VIDEOTAPED DEPOSITION OF PAUL W.

4    HRUZ, M.D., Ph.D., may be taken in shorthand by Brenda

5    Orsborn, a Certified Court Reporter, and afterwards

6    transcribed into typewriting; and the signature of the

7    witness is expressly not waived.

8                    *    *    *    *    *

9        VIDEOGRAPHER:  Good morning.  We're going on

10   the record at 8:58 a.m. on Monday, November 20th,

11   2017.  Please note that the microphones are sensitive

12   and may pick up whispering and private conversations

13   and cellular interference.  Please turn off all cell

14   phones or place them away from the microphones as they

15   can interfere with the deposition audio.  Audio and

16   video recording will continue to take place unless all

17   parties agree to go off the record.

18        This is Media Unit No. 1 of the video

19   recorded deposition of Dr. Paul Hruz, taken by counsel

20   for the Plaintiffs in the matter of Drew Adams versus

21   the School Board of St. Johns County, Florida, filed

22   in the United States District Court for the Middle

23   District of Florida.  This deposition is being held at

24   Veritext Legal Solutions, located at 515 Olive Street

25   in St. Louis, Missouri.

```
                                              Page 6
 1              My name is Kimberlee Lauer from Veritext,
 2      and I'm the videographer.  Our court reporter is
 3      Brenda Orsborn, also from Veritext.  I am not
 4      authorized to administer an oath.  I am not related to
 5      any party in this action.  Nor am I financially
 6      interested in the outcome.
 7              Counsel and all present in the room and
 8      everyone attending remotely will now please state your
 9      appearances and affiliations for the record, and if
10      there are any objections to proceeding, please state
11      them at the time of your appearance beginning, please,
12      with the noticing attorney.
13              MR. GONZALEZ-PAGAN:  Thank you.  Omar
14      Gonzalez-Pagan of Lambda Legal for the Plaintiff.
15              MS. RIVAUX:  Good morning.  Shani Rivaux
16      with Pillsbury Winthrop Shaw Pittman, on behalf of the
17      Plaintiff.
18              MR. KOSTELNIK:  Good morning, Kevin
19      Kostelnik of Sniffen & Spellman on behalf of the
20      Defendant.
21              THE WITNESS:  Paul Hruz --
22              MR. HARMON:  And this is Terry Harmon on the
23      phone, as well, for the Defendant.
24              THE WITNESS:  And Paul Hruz, pediatric
25      endocrinologist, witness for the defense.
```

1                          DR. PAUL HRUZ,

2     of lawful age, being produced, sworn and examined on

3     behalf of the Plaintiff, deposes and says:

4                           EXAMINATION

5     QUESTIONS BY MR. GONZALEZ-PAGAN:

6          Q.    All right.  Dr. Hruz, thank you for being

7     here today.  I know you're a busy man.  As you're

8     aware, I represent Drew Adams, the Plaintiff in this

9     litigation, and I'll be asking some questions about

10    your opinions in this case today.  I just want to go

11    over some ground rules just to get started.  First, do

12    you understand that you're under oath today?

13         A.    Yes, I do.

14         Q.    And that -- that this requires to testify

15    truthfully?

16         A.    Yes, I do.

17         Q.    We cannot be speaking at the same time.  It

18    will be annoying to the court reporter.  It will make

19    it difficult for you to hear me, me to hear you.  So

20    please let me finish a question before you start

21    answering it, and I'll strive to do the same as well,

22    and let you finish answering before I go into another

23    question.  Is that agreed?

24         A.    Very good.  Yes.

25         Q.    If you don't understand something I ask,

1  and again --

2       Q.    Okay.  So knowing that those are the

3  general, is there anything else that you would like to

4  add to that?

5       A.    Again, my opinions, and I -- I -- I prepared

6  my expert declaration based upon a consideration of

7  all of the information I had available to me, and I

8  tried to include everything that was pertinent in that

9  statement.

10      Q.    Okay.  So now that you've given us your

11 general opinions on this, are you offering an opinion

12 on whether Drew Adams is transgender?

13      A.    I am not.

14      Q.    Would you agree with me that there are

15 transgender people?

16      A.    I would agree with that there are people

17 that fulfill the criteria of gender dysphoria as

18 delineated in the DSM-5.

19      Q.    What do you understand transgender to mean?

20      A.    Are you speaking of -- just to clarify, are

21 you speaking about gender dysphoria or the general

22 term of transgender --

23      Q.    The term transgender.

24      A.    Transgender are -- is the condition in which

25 individuals have an identity -- a sexual -- or an

1  identity, a gender identity, that does not correspond

2  with their sex.

3      Q.   Okay.  So now understanding that term, I ask

4  you, would you agree with me that there are

5  transgender people?

6      A.   I would agree that there are individuals

7  that have a gender identity that does not match their

8  sex.

9      Q.   Okay.  Have you met with Drew Adams?

10     A.   I have not.

11     Q.   Did you request to meet with Drew Adams?

12     A.   I did not.

13     Q.   Did anyone tell you you could not meet with

14  Drew Adams?

15     A.   No.

16     Q.   Have you evaluated Drew Adams?

17     A.   Clarify what you mean by "evaluate."

18     Q.   As a doctor, you conduct evaluations of your

19  patients.

20     A.   So I have not participated in the medical

21  care of Drew Adams.

22     Q.   Okay.  So you have not treated Drew Adams

23  either?

24     A.   That is correct.

25     Q.   And you haven't examined him, medically

Page 18

1   examined Drew Adams either?

2         A.   I have never met him.

3         Q.   Did you ask for an independent medical

4   examination?

5         A.   I did not.

6         Q.   Have you ever met with either of Drew Adams'

7   parents?

8         A.   I have not.

9         Q.   Have you spoken with any of Drew Adams'

10  treating physicians?

11        A.   I'm -- I'm just trying to see if -- if the

12  ones that were listed, if I've ever met them at a

13  meeting.  I've never spoke with them directly related

14  to this case, no.

15        Q.   So if you've spoken to any of the doctors,

16  okay, you have never spoken with them about Drew

17  Adams?

18             MR. KOSTELNIK:  Form.

19        A.   That is correct.

20        Q.   (By Mr. Gonzalez-Pagan) Did anyone advise

21  you that you could not speak to Drew Adams' treating

22  physicians?

23        A.   No.

24        Q.   Do you believe that speaking with Drew

25  Adams' treating physicians would have enabled you to

1      A.   I -- as I said earlier, he is a biological

2  female that identifies as a male.  By that definition,

3  he would qualified as a transgender individual.

4      Q.   Is Drew a transgender boy?

5      A.   Again, you have to be very careful when you

6  make the designation.  The -- the terminology that is

7  often used right now would classify him as a

8  transgendered male.

9      Q.   If Drew told you he was a boy, would you

10  accept that?

11           MR. KOSTELNIK:   Form.

12      A.   It would depend on what he was asking in

13  terms of that, if he was asking about his gender

14  identity or his biology.  If he was asking about

15  whether he was biologically male or female, I would

16  say that he's biologically female.

17      Q.   (By Mr. Gonzalez-Pagan) And if he told you

18  that his gender identity was male?

19      A.   I would take him at his word.

20      Q.   If Drew told you he uses male pronouns,

21  would you use male pronouns?

22      A.   My practice is to use as much respect as I

23  can and within the confines of scientific and

24  biological reality, I would not have [sic] not an

25  objection to be able to identify him as he wished.

Page 25

1        A.   Well, again, if you would -- yeah, that is

2    true for -- for the -- the patient -- somebody like

3    Drew Adams that was biologically normal.  I have

4    certainly cared for hundreds of patients that have

5    disorders of sexual development.  Many practitioners

6    will include those in that designation.  I believe

7    that they are a completely different patient

8    population than Drew Adams.

9        Q.   (By Mr. Gonzalez-Pagan) What is gender

10   dysphoria?

11       A.   Gender dysphoria is the discomfort that one

12   experiences related to gender identity that does not

13   conform with one's biological sex.

14       Q.   Is that the definition in the DSM?

15       A.   Yes.

16       Q.   It uses the word "discomfort"?

17       A.   I'd have to go look back at the exact

18   wording of that.  It's the difficulty that they

19   experience, psychological difficulty with that, yes.

20       Q.   Okay.  And based on your testimony, would

21   you agree that you have not treated any transgender

22   patients for gender dysphoria?

23       A.   Yes, I would agree.

24       Q.   Would you agree that Drew's treating

25   physicians have diagnosed him with gender dysphoria?

```
                                              Page 26
 1        A.    I would agree, yes.
 2        Q.    Would you agree that Drew Adams suffers from
 3   gender dysphoria?
 4        A.    Based on the information presented to me, I
 5   would accept that.  I have nothing to dispute that.
 6        Q.    What do you understand gender-affirming
 7   treatment to mean?
 8             MR. KOSTELNIK:  Form.
 9        A.    So gender-affirming treatment?
10        Q.    (By Mr. Gonzalez-Pagan) Yes.
11        A.    That is the treatment paradigm that rather
12   than challenging the discrepancy between biological
13   sex and gender identity, it is affirmed and validated
14   in the individual, his -- encouraged in that
15   transgendered identity.
16        Q.    So I just want to clarify a little bit,
17   because you used different words there for what's
18   being -- you said not challenge, correct?
19        A.    That is correct.
20        Q.    You said that it's accepted, that they
21   accept the gender identity of the --
22        A.    And -- and I would say even encourage.
23        Q.    So that's where I was going.
24        A.    Yes.
25        Q.    So you think not challenging is the same as
```

Page 46

1    not -- not proven.

2         Q.    Do you have any basis to dispute the claim?

3         A.    No.

4         Q.    Having never met, evaluated, examined or

5    treated Drew Adams, can you offer an opinion regarding

6    Drew Adams specifically?

7              MR. KOSTELNIK:  Form.

8         A.    My opinions in this case are based upon a

9    review of the medical literature and in the condition

10   itself, and that is what I am offering to the court in

11   my serving as an expert witness.

12        Q.    (By Mr. Gonzalez-Pagan) Okay.  Can you point

13   me to where you have specific opinions with regards to

14   Drew Adams in your report?

15        A.    I specifically cover the medical

16   information.  I do have a paragraph in there where

17   I -- I go through the details of what the allegations

18   are, and --

19        Q.    Is that Paragraph 12?

20        A.    I -- yes, that is correct.

21        Q.    Is that a description of the case details?

22        A.    That is correct.

23        Q.    Is there any opinion specific as to Drew

24   Adams in Paragraph 12?

25        A.    No.

1      Q.   Is there any opinion specific as to Drew
2   Adams anywhere else in the report?
3      A.   No.  My opinions are based on -- near the
4   end of my declaration, I specifically state the
5   concerns in a -- in a general sense of all patients
6   that are -- are faced with this particular condition.
7   And I think that that certainly is pertinent to Drew
8   Adams in addition to the many other individuals that
9   are suffering from this condition.
10      Q.   Okay.  But none of those opinions are
11   specific to Drew Adams?
12      A.   They are applicable to all individuals that
13   present as Drew Adams does.
14           MR. GONZALEZ-PAGAN:  Move to strike as
15   nonresponsive.
16      Q.   (By Mr. Gonzalez-Pagan) Are they specific to
17   Drew Adams?
18      A.   They include Drew Adams.  They are not
19   limited to Drew Adams.
20      Q.   Would you agree that those opinions are
21   general in nature and not specific to Drew Adams?
22      A.   Yes.
23      Q.   Having never met, evaluated, examined or
24   treated Drew Adams, can you make an assessment as to
25   whether Drew Adams suffers from gender dysphoria?