**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| DREW ADAMS, a minor, by and through his next friend and mother, ERICA ADAMS KASPER,<br><br>  Plaintiff,<br><br>v.<br><br>THE SCHOOL BOARD OF ST. JOHNS COUNTY, FLORIDA,<br><br>  Defendant. | Case No. 3:17-cv-00739-TJC-JBT |

**PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING THE PROPER MEDICAL TREATMENT FOR GENDER DYSPHORIA, INCLUDING TESTIMONY AND EVIDENCE RELATING TO DESISTANCE, CONVERSION/REPARATIVE THERAPY, AND PUBERTY BLOCKERS, AND SUPPORTING MEMORANDUM OF LAW**

Pursuant to Federal Rules of Evidence 401, 402, and 403, Plaintiff, Drew Adams, a minor, by and through his next friend and mother, Erica Adams Kasper ("Plaintiff"), and by and through their undersigned counsel, respectfully moves through the instant Motion *in Limine* to preclude Defendant School Board of St. Johns County, Florida ("Defendant" or the "School Board") from offering any evidence, argument, or opinion – including through the testimony and exhibits of its designated expert witnesses, Dr. Allan Josephson and Dr. Paul Hruz (collectively, "Defendant's Experts") – regarding the proper medical treatments for gender dysphoria. Specifically, Plaintiff moves to exclude any evidence, argument, or opinion regarding purported desistence or persistence rates among children with gender dysphoria; the

1

efficacy or propriety of standard treatment methods and protocols for gender dysphoria, such as puberty blockers and hormone therapy; conversion or reparative therapy (which controversially, and illegally in some states, endeavors to change a patient's gender identity to correspond to their sex assigned at birth); and informed consent by transgender patients regarding treatment methods and protocols. As explained below, such evidence, argument, or opinions should be excluded because: (1) these issues are irrelevant to the claims and defenses pled in this case and are therefore excludable under Federal Rules of Evidence ("Rule") 401 and 402; (2) the evidence and argument is prejudicial under Rule 403; and, (3) presentation of this information would be a waste of judicial resources as they are unhelpful under Rule 611.

While discussion of how Defendant's discriminatory policy impacts Plaintiff's gender dysphoria is clearly relevant, none of the above-referenced information has anything to do with that issue. On the contrary, by and large this information relates to a wholly different fact pattern. Here, there is no dispute that Drew is transgender, no dispute that he was diagnosed with gender dysphoria, and no dispute that he is well into his transition, including hormone therapy and top surgery. The testimony and opinions offered by Defendant's Experts relates to purported treatments (unsupported by the medical community by and large, and even illegal in some states) and theories that would be apply to non-transgender children. Since it is undisputed that Drew is a transgender boy who has transitioned, the opinions Defendant's Experts want to introduce simply have no application or relevance here.

Moreover, any discussion of the aforementioned issues should be excluded as prejudicial, a waste of time and resources. This is a case about unlawful discrimination based

on Plaintiff's transgender status and sex. Here, there is no dispute about Drew's transgender status and the propriety of his medical treatment is not at issue, this evidence must be excluded.

## BACKGROUND

On June 28, 2017, Plaintiff filed a complaint alleging that the School Board's policy preventing him from using the bathroom which corresponds to his gender identity constitutes impermissible discrimination under the Equal Protection Clause of the Fourteenth Amendment based on sex and transgender status, and unlawful sex discrimination under Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 *et seq*. ("Title IX"). Plaintiff's complaint asserts that Plaintiff is a boy, who is transgender, and who has been diagnosed with gender dysphoria. Plaintiff seeks a declaratory judgment that his exclusion from the boys' restroom by the School Board violates the Equal Protection Clause and Title IX, as well as injunctive relief enjoining the School Board from denying him equal access, as well as compensatory and non-economic garden variety damages.

As such, the issue in this case is narrow, limited solely to whether Defendant's policy prohibiting transgender students—in this case a transgender boy—from using the restroom consistent with their gender identity is discriminatory and violates Title IX and the Equal Protection Clause of the United States Constitution. There is no dispute that Drew is transgender and Defendant certainly has not and cannot introduce evidence to dispute this fact. Indeed, neither of Defendant's experts or other witnesses has disputed this fact. There is likewise no dispute that Drew has already taken steps to socially and medically transition.

Defendant has identified Dr. Allan Josephson as an expert witness and Dr. Paul Hruz as a rebuttal expert witness; Defendant has also indicated that it intends to call them at trial.[1] *See* Dkt. 100. Dr. Josephson is a psychiatrist who purports to be "an expert in the assessment and treatment of adolescents." Josephson's November 3, 2017 Report at para. 4. Dr. Hruz is an endocrinologist with purportedly "extensive experience in treating infants and children with disorders of sexual development." Hruz's November 3, 2017 Report at para. 5. Dr. Hruz, however, admits to having *zero experience* treating transgender patients for gender dysphoria. *Id.* at para. 8. And notably, neither Dr. Josephson nor Dr. Hruz have spoken to, treated, or evaluated Plaintiff. *See* Josephson Report; Hruz Report. *See also* Hruz Depo. Tr. 17:9-18:2; *id.* at 46:23-47:22; Josephson Depo. Tr. 9:24-10:7.[2] In fact, Dr. Josephson had not even reviewed Plaintiff's medical records when he submitted his Report (Josephson Report, para. 9), and testified that he is not offering an opinion regarding the medical care received by Drew. Josephson Depo. Tr. 21:4-21:7. Neither of these experts question Drew's status as transgender, or that he was diagnosed with gender dysphoria. Given their testimony, the expert testimony on points that have no relationship to the merits of this case is clearly designed to indirectly do what Defendant's Experts cannot do directly, to wit: call into question Drew's status as transgender and the treatment he has received. Ignoring for a minute that Defendant would

---

[1] Plaintiff intends to file *Daubert* motions to exclude the testimony of both Dr. Josephson and Dr. Hruz.

[2] The relevant excerpts of Dr. Hruz's deposition transcript are attached hereto as "Exhibit A" and the relevant excerpts of a rough draft of Dr. Josephson's deposition transcript are attached hereto as "Exhibit B." Because Dr. Josephson was deposed just yesterday, November 28, 2017, Plaintiff only has access to a rough draft of the deposition transcript at this time, of which excerpts are included with this motion.

have no standing to do so in any event, since this is not a case about the efficacy of Drew's medical care, the reality is that Defendant cannot try and back door expert testimony on subjects that are irrelevant and prejudicial.

Instead of addressing issues relevant to this litigation, Dr. Josephson's Report is replete with inapposite and unhelpful, generalized "expert" opinions and unsupported assertions regarding: gender dysphoria in general and Dr. Josephson's apparent disagreement with the diagnostic features of the DSM-5 and medical standards of care; "the validity of a transgender diagnosis" (a blatant misnomer since being transgender is one's identity and not a diagnosis); Dr. Josephson's call for rejecting what he calls the "transgender proposition" and instead advocating for conversion or reparative therapy to "align[] gender identity with birth sex"; Dr. Josephson's questioning the efficacy of standard treatments for gender dysphoria, generally such puberty blockers, hormone therapy, and surgery; and purported desistence or persistence rates among children who suffer from gender dysphoria. *Id*. at para. 16, 24, 28, 30, 37. Notably, Dr. Josephson has testified that Drew is a transgender boy, that he was diagnosed with gender dysphoria and he has no basis to question Drew's medical treatment or whether Drew will persist. Josephson Depo. Tr. 21:4-21:7 ("Q. Yes. Thank you. Are you offering any opinions about the propriety of Drew's transition-related medical care he's received? A. No."); *id*. at 20:3-20:5 ("Q. Do you agree that Drew Adams was diagnosed with gender dysphoria by his medical providers? A. Yes"); *id.* at 18:16-18-18 ("Q. Okay. Do you have any reason to doubt that Drew identifies as male? A. No.").

Similarly, Dr. Hruz's Report fails to direct his report to the actual Plaintiff or issues relevant to this litigation. *See* Hruz Depo. Tr. 46:23-47:22. Instead, Dr. Hruz focuses on his

5

generalized opinions regarding: "Desistance (i.e. reversion to gender identity concordant with sex) . . . as a desired goal"; the medical "[t]reatment of gender dysphoric children who experience persistence symptoms"; activities that "encourage[] or perpetuate[] transgender persistence"; Dr. Hruz's questioning the efficacy of standard treatments for gender dysphoria, generally such puberty blockers, hormone therapy, and surgery; purported desistence or persistence rates among children who suffer from gender dysphoria; and any discussion about "making informed consent" to medical treatments for gender dysphoria.  Hruz Report at para. 28, 37, 39, 43, 46.  As with Dr. Josephson, Dr. Hruz has not and cannot testify that any of his musings apply to this Plaintiff, or to any individual that is transgender.  Rather, Defendant's Experts focus on their generic view that before treating a gender dysphoric pre-pubescent child, a full exploration should be performed.  Obviously, that is not the case for this Plaintiff, who is a post-pubescent 17-year-old boy who has been diagnosed with gender dysphoria and who has already undertaken medical treatment to address his gender dysphoria.[3]  Accordingly, the generalized views of Defendant's Experts on transitioning and the treatments relating to the same simply have no application here.

Put simply, Plaintiff is transgender and has been diagnosed with gender dysphoria, and neither of Defendant's purported experts disputes such facts.  Hruz Depo. Tr. 16:10-16:14; *id.* at 23:4-23:8; *id.* at 25:24-26:5; Josephson Depo. Tr. 20:3-20:5; *id.* at 20:23-20:25; *id.* at 18:16-18-18.  The tangential opinions of Dr. Josephson and Dr. Hruz – regarding, *inter alia*, the

---

[3] Put another way, this is a case about whether Plaintiff was subjected to unlawful discrimination based on his transgender status and sex. ***This is not a case about the propriety of the medical treatment Plaintiff has received for his undisputed gender dysphoria diagnosis.***

persistence or desistence rates of gender dysphoria among children; the efficacy or propriety of standard treatments for gender dysphoria such as hormone therapy, conversion or reparative therapy, and issues of informed consent – go far afield from Plaintiff's personal diagnosis and transgender status (which they have acknowledged they cannot dispute) and address issues that have no bearing on the ultimate outcome of Plaintiff's Fourteenth Amendment or Title IX claims.

Moreover, the outlier opinions of Drs. Josephson and Hruz on general matters relating to the medical treatment of gender dysphoria or whether some children with gender dysphoria persist or desist (recognizing that there is a difference between being transgender and having a gender dysphoria diagnosis or engaging in exploration of one's gender expression as a young child) are not relevant to the issues before the Court. Given the limited time available for this trial, it would be wasteful to have Defendant's Experts to devote their testimony on irrelevant information that simply has no application to the present case. As detailed below, all evidence relating to these matters should be excluded.

## ARGUMENT

The purpose of a motion *in limine* is "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). In doing so, it "narrow[s] the evidentiary issues for trial and . . . eliminate[s] unnecessary trial interruptions." *Bradley v. Pittsburgh Board of Education*, 913 F. 2d 1064, 1069 (3d Cir. 1990). Here, any evidence, including the testimony by Defendant's expert witnesses on the persistence or desistence of gender dysphoria among children; the efficacy of hormone treatments and puberty suppression regimens; and the concept of reparative or conversion

therapy, all fall outside the scope of pertinent issues in the present case. Granting this motion will therefore limit the evidentiary discussion at trial to the core of the case, which is whether Plaintiff has been subjected to unlawful discrimination under the Equal Protection Clause of the Fourteenth Amendment and Title IX.

All evidence must be relevant to be admissible. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence," and that fact "is of consequence in determining the action." Fed. R. Evid. 401. In other words, "[t]he evidence must be probative of the proposition it is offered to prove, and the proposition must be one that is of consequence to the determination of the action." *United States v. Troya*, 733 F. 3d 1125, 1131 (11th Cir. 2013) (quoting *United States v. Glasser*, 773 F. 2d 1553, 1559 n. 4 (11th Cir. 1985)). Evidence which is not relevant is inadmissible. Fed. R. Evid. 402. "[T]he party introducing evidence carries the burden of demonstrating the evidence's relevance." *Dowling v. United States*, 493 U.S. 342, 351 n. 3 (1990). Relevant evidence should nevertheless be excluded if its introduction will result in "unfair prejudice, confus[ion of] the issues, [or] misleading the jury." Fed. R. Evid. 403.

Expert testimony is not automatically relevant or admissible. The testimony of a purported expert must both "rest on a reliable foundation and [be] relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). In order to be relevant, the testimony must "assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or determine a fact in issue." *City of Tuscaloosa v. Harcross Chemicals, Inc.*, 158 F. 3d 548, 562 (11th Cir. 1998). Testimony which fails to provide such assistance does not meet the evidentiary standards of

the Federal Rules, and should be excluded. *Daubert*, 590 U.S. at 591; *see also* Plaintiff's forthcoming *Daubert* motions.

**A. <u>Any Evidence, Argument, or Opinion Regarding Rates of Desistence or Persistence of Gender Dysphoria Among Children Must Be Excluded.</u>**

In his report, Dr. Josephson opines that there are some children diagnosed with gender dysphoria who will not ultimately continue to suffer gender dysphoria "[a]t the end of adolescence," which he refers to as "desistence." Josephson Report, para. 30. Hruz makes a nearly identical claim in his own report. Hruz Report, para. 66. However, the persistence or desistence rates of gender dysphoria in children in general has no bearing on Plaintiff's specific gender dysphoria diagnosis, or whether Plaintiff is transgender. Even assuming *arguendo* that some children with gender dysphoria ultimately identify with a gender that matches their birth sex at the end of adolescence, that is not the case here. That is not Drew's situation and has no bearing on his diagnosis of gender dysphoria or his transgender status. Nor does it make the School Board's policy less discriminatory. It is undisputed that there are transgender children and adolescents, so what is the relevance of this testimony? This testimony will not aid the trier of fact in deciding the ultimate issue: whether the School Board has engaged in unconstitutional and unlawful discrimination against Plaintiff based on his sex and transgender status, a status that is not in question. The only plausible explanation is that Defendant wishes to cast doubt generally on the validity of a diagnosis of gender dysphoria, an issue not before this Court. Indeed, Plaintiff is a 17-year-old transgender boy; he is not a child who is unsure about his gender identity.

Because discussion about the persistence or desistance rates among children with gender dysphoria is not probative of any fact at issue in this case, any evidence or argument

9

relating to such persistence or desistance rates should be excluded under Federal Rules of Evidence 401, 402, and 403. As this testimony cannot be used to help determine a fact in issue, it must be excluded.

### B. Any Evidence, Argument, or Opinion Regarding Efficacy of Conversion/Reparative Therapy Must Be Excluded.

Dr. Hruz asserts that "[d]esistence . . . provides the greatest lifelong benefit and is the outcome in the majority of cases and should be maintained as a desired goal." Hruz Report, para. 68. Similarly, Dr. Josephson believes that it is important to encourage gender dysphoric children to embrace, rather than "avoid or deny" the "prospects, expectations, and roles they believe are attached to their given sex." Josephson Report, para. 8-9. As an initial matter, these views are not supported by any major national or international medical association that speaks with authority on gender dysphoria treatment. *See King v. Governor of the State of New Jersey*, 767 F.3d 216, 221–22 (3d Cir. 2014) (noting the "reports, articles, resolutions, and position statements from reputable mental health organizations opposing" conversion/reparative therapy and that "[m]any of these sources emphasized that such efforts are ineffective and/or carry a significant risk of harm"); *Pickup v. Brown*, 740 F.3d 1208, 1223–24 (9th Cir. 2014) (noting "the well-documented, prevailing opinion of the medical and psychological community that [conversion/reparative therapy] has not been shown to be effective and that it creates a potential risk of serious harm to those who experience it" and noting the legislature reliance's on position statements, articles, and reports published by the following organizations: the American Psychological Association, the American Psychiatric Association, the American School Counselor Association, the American Academy of Pediatrics, the American Medical Association, the National Association of Social Workers, the

American Counseling Association, the American Psychoanalytic Association, the American Academy of Child and Adolescent Psychiatry, and the Pan American Health Organization."). Thus, their reliability under *Daubert* and Rule 702 is highly suspect. For this reason, Plaintiff will separately be filing a *Daubert* motion as to both of Defendant's Experts.

However, even if the Court were to accept the opinions of Drs. Hruz and Josephson as true, their opinions have no bearing on the question of whether the School Board has discriminated against Plaintiff on the basis of *his* sex or transgender status. By presenting gender dysphoria and transgender identity as something which is generally "abnormal" and must be "fixed," Defendant will only serve to prejudice the Court against Plaintiff by again casting doubt on his diagnosis and identity, two things that are not and cannot be disputed. Defendant's Experts conceded that they are not offering opinions on either Drew's transgender status or his diagnosis with gender dysphoria. Hruz Depo. Tr. 25:24-26:5; *id.* at 23:4-23:8; Josephson Depo. Tr. 20:15-20:25. The underlying causes or most effective treatments for gender dysphoria are not before this Court. It is not the role of the School Board to question their students' medical diagnoses or argue that the prescribed treatment – including social transition and access to restrooms corresponding to one's gender identity; indeed, even its own experts acknowledge they have no basis to do so. Rather, the focus here is whether Defendant's policies run afoul of Title IX or the Equal Protection Clause. Even if Drs. Josephson and Hruz's opinions were supported by the scientific community, *which they decidedly are not*, they would still have no bearing on the present case, and must be excluded.

    C. **Any Evidence, Argument, or Opinion Regarding Efficacy of Puberty Blockers and Hormonal Treatments Must Be Excluded.**

Both Drs. Josephson and Hruz are of the opinion that puberty blockers and hormonal

11

treatments pose risks to patients, though they openly concede that their opinions regarding treatment for gender dysphoria are contrary to the applicable standards of care, clinical guidelines, and general medical consensus. Josephson Report, para. 36; Hruz Report, para. 37, 39, 41-44. Dr. Hruz has also never treated a single transgender patient. Hruz Report, para. 8. Their assertions regarding medical treatment for gender dysphoria, even if true (which they are not), have no bearing on the present case as Plaintiff has already been through years of psychological evaluation and treatment by multiple doctors in multiple states. The list of medical professionals treating Plaintiff does not include Drs. Josephson or Hruz. Neither of them has ever, by their own admission, treated or consulted with Plaintiff. *See* Hruz Depo. Tr. 17:9-18:2; *id.* at 46:23-47:22; Josephson Depo. Tr. 9:24-10:7; *id.* at 20:3-20:5; *id.* at 20:15-20:22.

The opinions of Dr. Josephson, Dr. Hruz, or Defendant regarding treatment for gender dysphoria generally, let alone for Plaintiff, are irrelevant as they have no basis on which to question Plaintiff's diagnosis or any treatments he has received. Put simply, this is not a case about the propriety of Plaintiff's medical treatment and Defendant cannot indirectly put his medical care at issue by offering their musings on what medical treatments are available or could have been offered.

### D. Any Evidence, Argument, or Opinion Regarding Informed Consent by Patients Suffering Gender Dysphoria Must Be Excluded.

Dr. Hruz, in his work with disorders of sexual development, ascribes to the policy that "[d]ecisions on whether to surgically alter the external genitalia to align with sex are generally deferred until the patient is able to provide consent." Hruz Report, para. 65. Putting aside the fact that gender dysphoria is not considered a disorder of sexual development, *see* Hruz Report,

12

para. 29, there is no evidence in this case that surgery has been carried out on Plaintiff without his informed consent. Plaintiff has not had any genital surgery, also known as "bottom surgery." Plaintiff is 17 years old, late in his adolescent development, which is the time at which such surgeries are normally performed if someone is transitioning during adolescence. The implication that Plaintiff somehow could not give "informed consent" to his surgery is a suggestion which, much like suggestions regarding the risks of hormone therapy, are not borne out by the evidence in this particular case.

Moreover, Plaintiff's medical hormonal treatment has been performed not only with his consent, but that of his parents. *See* Exhibit C – Informed Consent Form by Drew's Parents. As such, notwithstanding the irrelevancy of this line of argument, there can be no question on whether Plaintiff's medical treatment has been properly assented to through informed consent.

Defendant does not need to present or explain this "informed consent" theory to defend against Plaintiff's allegations. As stated previously, the actions of Plaintiff's doctors, or the effects of Plaintiff's treatments, have no bearing on whether the School Board's policy is discriminatory, or whether Plaintiff suffered harm as a result of the policy. The damage that Plaintiff suffers daily as a result of the School Board's prohibition occurs no matter what the consent protocols for his surgeries happen to be. Thus, Dr. Hruz's testimony on the standard practices of "informed consent" are utterly irrelevant to the issues at hand, and must be excluded.

## **CONCLUSION**

WHEREFORE, based on the foregoing, Plaintiff respectfully requests that the Court grant the instant motion *in limine* in full and preclude Defendant from offering any evidence,

argument, or opinion regarding the proper medical treatment for gender dysphoria, as well as specifically exclude any evidence, argument, or opinion regarding purported desistence or persistence rates among children with gender dysphoria; the efficacy or propriety of standard treatment methods and protocols for gender dysphoria, such as puberty blockers and hormone therapy; conversion or reparative therapy; and informed consent by transgender patients regarding treatment methods and protocols.

## CERTIFICATE OF CONFERENCE PURSUANT TO LOCAL RULE 3.01(g)

Pursuant to 3.01(g) of the Local Rules of the Middle District of Florida, the undersigned certifies that he has conferred with the attorneys representing Defendant regarding the relief requested in the motion. The parties were unable to reach a resolution and Defendant's counsel does not consent to the relief requested.

Dated this 29th of November, 2017.

Respectfully submitted,

*/s/ Omar Gonzalez-Pagan*

| | |
|---|---|
| Omar Gonzalez-Pagan | Kirsten Doolittle, Trial Counsel |
| (*admitted pro hac vice*) | Florida Bar No. 942391 |
| LAMBDA LEGAL DEFENSE | THE LAW OFFICE OF KIRSTEN DOOLITTLE, P.A. |
| AND EDUCATION FUND, INC. | The Elks Building |
| 120 Wall Street, 19th Floor | 207 North Laura Street, Ste. 240 |
| New York, New York 10005-3919 | Jacksonville, FL 32202 |
| Telephone: 212-809-8585 | Telephone: 904-551-7775 |
| Facsimile: 212-809-0055 | Facsimile: 904-513-9254 |
| ogonzalez-pagan@lambdalegal.org | kd@kdlawoffice.com |

| | |
|---|---|
| Natalie Nardecchia<br>(*admitted pro hac vice*)<br>LAMBDA LEGAL DEFENSE AND<br>    EDUCATION FUND, INC.<br>4221 Wilshire Boulevard, Suite 280<br>Los Angeles, CA 90010-3512<br>Tel. 213-382-7600 | Fax: 213-351-6050<br>nnardecchia@lambdalegal.org | Jennifer Altman<br>Florida Bar No: 881384<br>Markenzy Lapointe<br>Florida Bar No: 172601<br>Shani Rivaux<br>Florida Bar No: 42095<br>Aryeh Kaplan<br>Florida Bar No: 60558<br>PILLSBURY WINTHROP SHAW PITTMAN, LLP<br>600 Brickell Avenue Suite 3100<br>Miami, FL 33131<br>Telephone:  786-913-4900<br>Facsimile:  786-913-4901<br>jennifer.altman@pillsbury.com<br>markenzy.lapointe@pillsburylaw.com<br>shani.rivaux@pillsbury.com<br>aryeh.kaplan@pillsbury.com |
| Tara L. Borelli (*admitted pro hac vice*)<br>LAMBDA LEGAL DEFENSE AND<br>    EDUCATION FUND, INC.<br>730 Peachtree Street NE, Suite 640<br>Atlanta, GA 30308-1210<br>Telephone:  404-897-1880<br>Facsimile:  404-897-1884<br>tborelli@lambdalegal.org | |
| Paul D. Castillo (*admitted pro hac vice*)<br>LAMBDA LEGAL DEFENSE<br>    AND EDUCATION FUND, INC.<br>3500 Oak Lawn Avenue, Suite 500<br>Dallas, Texas 75219<br>Telephone:  214-219-8585<br>Facsimile:  214-219-4455<br>pcastillo@lambdalegal.org | Richard M. Segal (*admitted pro hac vice*)<br>Nathaniel R. Smith (*admitted pro hac vice*)<br>PILLSBURY WINTHROP SHAW PITTMAN LLP<br>501 W. Broadway, Suite 1100<br>San Diego, CA 92101<br>Telephone:  619-234-5000<br>Facsimile:  619-236-1995<br>richard.segal@pillsburylaw.com<br>nathaniel.smith@pillsburylaw.com |

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2017, the foregoing motion was filed electronically using the Court's ECF system, which will provide electronic notice to all counsel of record, including:

>Terry J. Harmon (tharmon@sniffenlaw.com)
>Robert J. Sniffen (rsniffen@sniffenlaw.com)
>Michael P. Spellman (mspellman@sniffenlaw.com)
>Lisa B. Fountain (lfountain@sniffenlaw.com)
>Kevin Kostelnik (kkostelnik@sniffenlaw.com)
>SNIFFEN & SPELLMAN, P.A.
>123 North Monroe Street
>Tallahassee, Florida 32301
>
>Robert Christopher Barden (rcbarden@mac.com)
>RC Barden & Associates
>5193 Black Oaks Court North
>Plymouth, MN 55446-2603
>
>*Attorneys for Defendant, The School Board of St. Johns County, Florida*

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan
(*admitted pro hac vice*)
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, New York 10005-3919
Tel.: 212-809-8585 | Fax: 212-809-0055
ogonzalez-pagan@lambdalegal.org