# EXHIBIT A

Page 1

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF FLORIDA

DREW ADAMS, a minor,          )
                              )
        Plaintiff,            )
                              )
   vs.                        ) Civil Action
                              ) No. 3:17-cv-00739-TJC-JBT
THE SCHOOL BOARD OF ST.       )
JOHNS COUNTY, FLORIDA,        )
                              )
        Defendant.            )

VIDEOTAPED DEPOSITION OF PAUL W. HRUZ, M.D., Ph.D
Taken on behalf of Plaintiff
November 20, 2017
(Starting time of the deposition: 8:58 a.m.)

**INDEX OF EXAMINATION**

|   | Page |
|---|---|
| Questions by Mr. Gonzalez-Pagan .................. | 7 |
| Questions by Mr. Kostelnik ....................... | 286 |
| Further Questions by Mr. Gonzalez-Pagan .......... | 292 |

**INDEX OF EXHIBITS**

| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| For the Plaintiff: | | |
| Exhibit 1 | Subpoena | 11 |
| Exhibit 2 | Expert Declaration | 29 |
| Exhibit 3 | Growing Pains Article | 29 |
| Exhibit 4 | Letter | 68 |
| Exhibit 5 | Article | 163 |
| Exhibit 6 | Article | 231 |
| Exhibit 7 | Article | 246 |
| Exhibit 8 | Article | 249 |

(The original exhibits were retained by the court reporter, to be attached to Mr. Gonzalez-Pagan's transcript.)

Page 3

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF FLORIDA

```
DREW ADAMS, a minor,       )
                           )
        Plaintiff,         )
                           )
   vs.                     ) Civil Action
                           ) No.3:17-cv-00739-TJC-JBT
THE SCHOOL BOARD OF ST.    )
JOHNS COUNTY, FLORIDA,     )
                           )
        Defendants.        )
```

            VIDEOTAPED DEPOSITION OF WITNESS, PAUL W.
HRUZ, M.D., Ph.D., produced, sworn, and examined on
the 20th day of November, 2017, between the hours of
nine o'clock in the forenoon and six o'clock in the
evening of that day, at the offices of Veritext Legal
Solutions, 515 Olive Street, Suite 300, St. Louis,
Missouri before BRENDA ORSBORN, a Certified Court
Reporter within and for the State of Missouri, in a
certain cause now pending in the United States
District Court for the Middle District of Florida,
wherein Drew Adams, a minor, is the Plaintiff and The
School Board of St. Johns County, Florida is the
Defendant.

```
                                                        Page 4

  1                    A P P E A R A N C E S
  2            For the Plaintiff:
  3            Mr. Omar Gonzalez-Pagan
               Lambda Legal
  4            120 Wall Street
               New York, New York 10005
  5            (212) 809-8585
               ogonzalez-pagan@lambdalegal.org
  6            and
               Ms. Shani Rivaux
  7            Pillsbury Winthrop Shaw Pittman LLP
               600 Brickell Avenue, Suite 3100
  8            Miami, Florida 33131
               (786) 913-4882
  9            shani.rivaux@pillsburylaw.com
 10
 11            For the Defendant:
 12            Mr. Kevin Kostelnik
               Mr. Terry Harmon (via phone)
 13            Sniffen & Spellman, P.A.
               123 North Monroe Street
 14            Tallahassee, Florida 32301
               (850) 205-1996
 15            kkostelnik@sniffenlaw.com
 16
 17            The Court Reporter:
 18            Ms. Brenda Orsborn, RPR/CSR/CCR
               Missouri CCR No. 914
 19            Illinois CSR No. 084-003460
               Veritext Legal Solutions
 20            515 Olive Street, Suite 300
               St. Louis, Missouri 63101
 21            (888) 391-3376
 22
 23            The Videographer:  Ms. Kimberlee Lauer
 24
 25
```

Page 5

1    IT IS HEREBY STIPULATED AND AGREED, by and
2  between counsel for Plaintiffs and counsel for
3  Defendants that the VIDEOTAPED DEPOSITION OF PAUL W.
4  HRUZ, M.D., Ph.D., may be taken in shorthand by Brenda
5  Orsborn, a Certified Court Reporter, and afterwards
6  transcribed into typewriting; and the signature of the
7  witness is expressly not waived.
8             * * * * *
9    VIDEOGRAPHER: Good morning. We're going on
10 the record at 8:58 a.m. on Monday, November 20th,
11 2017. Please note that the microphones are sensitive
12 and may pick up whispering and private conversations
13 and cellular interference. Please turn off all cell
14 phones or place them away from the microphones as they
15 can interfere with the deposition audio. Audio and
16 video recording will continue to take place unless all
17 parties agree to go off the record.
18    This is Media Unit No. 1 of the video
19 recorded deposition of Dr. Paul Hruz, taken by counsel
20 for the Plaintiffs in the matter of Drew Adams versus
21 the School Board of St. Johns County, Florida, filed
22 in the United States District Court for the Middle
23 District of Florida. This deposition is being held at
24 Veritext Legal Solutions, located at 515 Olive Street
25 in St. Louis, Missouri.

Page 6

1             My name is Kimberlee Lauer from Veritext,
2    and I'm the videographer.  Our court reporter is
3    Brenda Orsborn, also from Veritext.  I am not
4    authorized to administer an oath.  I am not related to
5    any party in this action.  Nor am I financially
6    interested in the outcome.
7             Counsel and all present in the room and
8    everyone attending remotely will now please state your
9    appearances and affiliations for the record, and if
10   there are any objections to proceeding, please state
11   them at the time of your appearance beginning, please,
12   with the noticing attorney.
13            MR. GONZALEZ-PAGAN:  Thank you.  Omar
14   Gonzalez-Pagan of Lambda Legal for the Plaintiff.
15            MS. RIVAUX:  Good morning.  Shani Rivaux
16   with Pillsbury Winthrop Shaw Pittman, on behalf of the
17   Plaintiff.
18            MR. KOSTELNIK:  Good morning, Kevin
19   Kostelnik of Sniffen & Spellman on behalf of the
20   Defendant.
21            THE WITNESS:  Paul Hruz --
22            MR. HARMON:  And this is Terry Harmon on the
23   phone, as well, for the Defendant.
24            THE WITNESS:  And Paul Hruz, pediatric
25   endocrinologist, witness for the defense.

Page 7

1  DR. PAUL HRUZ,
2  of lawful age, being produced, sworn and examined on
3  behalf of the Plaintiff, deposes and says:
4  EXAMINATION
5  QUESTIONS BY MR. GONZALEZ-PAGAN:
6      Q.   All right.  Dr. Hruz, thank you for being
7  here today.  I know you're a busy man.  As you're
8  aware, I represent Drew Adams, the Plaintiff in this
9  litigation, and I'll be asking some questions about
10 your opinions in this case today.  I just want to go
11 over some ground rules just to get started.  First, do
12 you understand that you're under oath today?
13     A.   Yes, I do.
14     Q.   And that -- that this requires to testify
15 truthfully?
16     A.   Yes, I do.
17     Q.   We cannot be speaking at the same time.  It
18 will be annoying to the court reporter.  It will make
19 it difficult for you to hear me, me to hear you.  So
20 please let me finish a question before you start
21 answering it, and I'll strive to do the same as well,
22 and let you finish answering before I go into another
23 question.  Is that agreed?
24     A.   Very good.  Yes.
25     Q.   If you don't understand something I ask,

1   and again --
2         Q.    Okay.  So knowing that those are the
3   general, is there anything else that you would like to
4   add to that?
5         A.    Again, my opinions, and I -- I -- I prepared
6   my expert declaration based upon a consideration of
7   all of the information I had available to me, and I
8   tried to include everything that was pertinent in that
9   statement.
10        Q.    Okay.  So now that you've given us your
11  general opinions on this, are you offering an opinion
12  on whether Drew Adams is transgender?
13        A.    I am not.
14        Q.    Would you agree with me that there are
15  transgender people?
16        A.    I would agree with that there are people
17  that fulfill the criteria of gender dysphoria as
18  delineated in the DSM-5.
19        Q.    What do you understand transgender to mean?
20        A.    Are you speaking of -- just to clarify, are
21  you speaking about gender dysphoria or the general
22  term of transgender --
23        Q.    The term transgender.
24        A.    Transgender are -- is the condition in which
25  individuals have an identity -- a sexual -- or an

```
                                                   Page 17
 1    identity, a gender identity, that does not correspond
 2    with their sex.
 3         Q.   Okay.  So now understanding that term, I ask
 4    you, would you agree with me that there are
 5    transgender people?
 6         A.   I would agree that there are individuals
 7    that have a gender identity that does not match their
 8    sex.
 9         Q.   Okay.  Have you met with Drew Adams?
10         A.   I have not.
11         Q.   Did you request to meet with Drew Adams?
12         A.   I did not.
13         Q.   Did anyone tell you you could not meet with
14    Drew Adams?
15         A.   No.
16         Q.   Have you evaluated Drew Adams?
17         A.   Clarify what you mean by "evaluate."
18         Q.   As a doctor, you conduct evaluations of your
19    patients.
20         A.   So I have not participated in the medical
21    care of Drew Adams.
22         Q.   Okay.  So you have not treated Drew Adams
23    either?
24         A.   That is correct.
25         Q.   And you haven't examined him, medically
```

Page 18

1 examined Drew Adams either?
2    A.  I have never met him.
3    Q.  Did you ask for an independent medical
4 examination?
5    A.  I did not.
6    Q.  Have you ever met with either of Drew Adams'
7 parents?
8    A.  I have not.
9    Q.  Have you spoken with any of Drew Adams'
10 treating physicians?
11    A.  I'm -- I'm just trying to see if -- if the
12 ones that were listed, if I've ever met them at a
13 meeting. I've never spoke with them directly related
14 to this case, no.
15    Q.  So if you've spoken to any of the doctors,
16 okay, you have never spoken with them about Drew
17 Adams?
18    MR. KOSTELNIK:  Form.
19    A.  That is correct.
20    Q.  (By Mr. Gonzalez-Pagan) Did anyone advise
21 you that you could not speak to Drew Adams' treating
22 physicians?
23    A.  No.
24    Q.  Do you believe that speaking with Drew
25 Adams' treating physicians would have enabled you to

Page 23

1    A.   I -- as I said earlier, he is a biological
2  female that identifies as a male.  By that definition,
3  he would qualified as a transgender individual.
4    Q.   Is Drew a transgender boy?
5    A.   Again, you have to be very careful when you
6  make the designation.  The -- the terminology that is
7  often used right now would classify him as a
8  transgendered male.
9    Q.   If Drew told you he was a boy, would you
10 accept that?
11       MR. KOSTELNIK:  Form.
12   A.   It would depend on what he was asking in
13 terms of that, if he was asking about his gender
14 identity or his biology.  If he was asking about
15 whether he was biologically male or female, I would
16 say that he's biologically female.
17   Q.   (By Mr. Gonzalez-Pagan) And if he told you
18 that his gender identity was male?
19   A.   I would take him at his word.
20   Q.   If Drew told you he uses male pronouns,
21 would you use male pronouns?
22   A.   My practice is to use as much respect as I
23 can and within the confines of scientific and
24 biological reality, I would not have [sic] not an
25 objection to be able to identify him as he wished.

Page 25

1  A.  Well, again, if you would -- yeah, that is
2  true for -- for the -- the patient -- somebody like
3  Drew Adams that was biologically normal.  I have
4  certainly cared for hundreds of patients that have
5  disorders of sexual development.  Many practitioners
6  will include those in that designation.  I believe
7  that they are a completely different patient
8  population than Drew Adams.
9  Q.  (By Mr. Gonzalez-Pagan) What is gender
10  dysphoria?
11  A.  Gender dysphoria is the discomfort that one
12  experiences related to gender identity that does not
13  conform with one's biological sex.
14  Q.  Is that the definition in the DSM?
15  A.  Yes.
16  Q.  It uses the word "discomfort"?
17  A.  I'd have to go look back at the exact
18  wording of that.  It's the difficulty that they
19  experience, psychological difficulty with that, yes.
20  Q.  Okay.  And based on your testimony, would
21  you agree that you have not treated any transgender
22  patients for gender dysphoria?
23  A.  Yes, I would agree.
24  Q.  Would you agree that Drew's treating
25  physicians have diagnosed him with gender dysphoria?

Page 26

1    A.   I would agree, yes.
2    Q.   Would you agree that Drew Adams suffers from
3  gender dysphoria?
4    A.   Based on the information presented to me, I
5  would accept that.  I have nothing to dispute that.
6    Q.   What do you understand gender-affirming
7  treatment to mean?
8         MR. KOSTELNIK:  Form.
9    A.   So gender-affirming treatment?
10   Q.   (By Mr. Gonzalez-Pagan) Yes.
11   A.   That is the treatment paradigm that rather
12  than challenging the discrepancy between biological
13  sex and gender identity, it is affirmed and validated
14  in the individual, his -- encouraged in that
15  transgendered identity.
16   Q.   So I just want to clarify a little bit,
17  because you used different words there for what's
18  being -- you said not challenge, correct?
19   A.   That is correct.
20   Q.   You said that it's accepted, that they
21  accept the gender identity of the --
22   A.   And -- and I would say even encourage.
23   Q.   So that's where I was going.
24   A.   Yes.
25   Q.   So you think not challenging is the same as

Page 46

1  not -- not proven.
2       Q.   Do you have any basis to dispute the claim?
3       A.   No.
4       Q.   Having never met, evaluated, examined or
5  treated Drew Adams, can you offer an opinion regarding
6  Drew Adams specifically?
7            MR. KOSTELNIK:  Form.
8       A.   My opinions in this case are based upon a
9  review of the medical literature and in the condition
10 itself, and that is what I am offering to the court in
11 my serving as an expert witness.
12      Q.   (By Mr. Gonzalez-Pagan) Okay.  Can you point
13 me to where you have specific opinions with regards to
14 Drew Adams in your report?
15      A.   I specifically cover the medical
16 information.  I do have a paragraph in there where
17 I -- I go through the details of what the allegations
18 are, and --
19      Q.   Is that Paragraph 12?
20      A.   I -- yes, that is correct.
21      Q.   Is that a description of the case details?
22      A.   That is correct.
23      Q.   Is there any opinion specific as to Drew
24 Adams in Paragraph 12?
25      A.   No.

Page 47

1    Q.   Is there any opinion specific as to Drew
2    Adams anywhere else in the report?
3    A.   No.  My opinions are based on -- near the
4    end of my declaration, I specifically state the
5    concerns in a -- in a general sense of all patients
6    that are -- are faced with this particular condition.
7    And I think that that certainly is pertinent to Drew
8    Adams in addition to the many other individuals that
9    are suffering from this condition.
10   Q.   Okay.  But none of those opinions are
11   specific to Drew Adams?
12   A.   They are applicable to all individuals that
13   present as Drew Adams does.
14         MR. GONZALEZ-PAGAN:  Move to strike as
15   nonresponsive.
16   Q.   (By Mr. Gonzalez-Pagan) Are they specific to
17   Drew Adams?
18   A.   They include Drew Adams.  They are not
19   limited to Drew Adams.
20   Q.   Would you agree that those opinions are
21   general in nature and not specific to Drew Adams?
22   A.   Yes.
23   Q.   Having never met, evaluated, examined or
24   treated Drew Adams, can you make an assessment as to
25   whether Drew Adams suffers from gender dysphoria?